# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 12-87V
Filed: April 21, 2017

* * * * * * * * * * * * *
LISA FAUP, parent of A.F., a minor,     \*
    \*
    Petitioner,     \*     Special Master Sanders
    \*
v.     \*
    \*
SECRETARY OF HEALTH     \*     Interim Attorneys' Fees and Costs;
AND HUMAN SERVICES,     \*     Attorney Hourly Rate; Expert Hourly Rate.
    \*
    Respondent.     \*
* * * * * * * * * * * * *

Sylvia Chin-Caplan, Law Office of Sylvia Chin-Caplan, Boston, MA, for Petitioner.
Jennifer L. Reynaud, United States Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 8, 2017, Lisa Faup ("Petitioner") retained Ms. Sylvia Chin-Caplan as her counsel. Consented Mot. Substitute Att'y, ECF No. 75. On that day, Petitioner's former counsel, Mr. Ronald C. Homer, moved for an award of interim attorneys' fees and costs. Mot. Interim Att'ys' Fees, ECF No. 74. After careful consideration, the undersigned has determined to grant the request in full.

**I.  PROCEDURAL HISTORY**

On February 9, 2012, Lisa Faup ("Petitioner") filed a petition as the parent of A.F., a minor, pursuant to the National Vaccine Injury Compensation Program,[2] 42 U.S.C. §§ 300aa-10

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

to -34 (2012). Petitioner alleged that A.F. suffered from a "rheumatologic injury" as a result of the administration of Diphtheria-Tetanus-acellular-Pertussis ("DTaP") and inactivated polio ("IPV") vaccinations on March 13, 2009. Pet. 1, ECF No. 1. Petitioner was represented by Mr. Homer at the time of her filing. *Id.* The case was initially assigned to Special Master Sandra D. Lord. Not. Assignment, ECF No. 4.

Petitioner subsequently filed medical records over the months following her petition. *See* Docket Rep. Respondent filed his Rule 4(c) Report on June 18, 2012, recommending against compensation under the Vaccine Act. Resp't Rep., ECF No. 12. Respondent argued that Petitioner could neither show that A.F. suffered from the residual effects of her injury for more than six months, nor did Petitioner provide a medical theory connecting A.F.'s vaccinations to her injury. *Id.* at 12-13. Respondent claimed that Petitioner's case relied upon a "'*post hoc ergo propter hoc*' line of reasoning, [which is] unpersuasive in Program cases, and cannot satisfy petitioner's burden of proof." *Id.* at 13.

Special Master Lord held a status conference on June 29, 2012. Min. Entry, dated June 29, 2012. Petitioner argued during the status conference that she satisfied the six-month requirement as A.F. took prescription medication for more than six months. Order, ECF No. 14. Special Master Lord stated that "this issue needed to be resolved before moving forward with the case." *Id.* Special Master Lord ordered Respondent to submit a motion for summary judgment, "at a minimum, address[ing] the question whether an injury may be deemed to have persisted for a period of six months when the symptoms are ameliorated by medication before the expiration of six months, but the medication continues to be prescribed and administered beyond the six-month period." *Id.*

On August 17, 2012, Respondent submitted his Motion for Summary Judgment. Mot. Summ. J., ECF No. 15. In his Motion, Respondent argued that medicinal amelioration of symptoms is insufficient to satisfy the Vaccine Act's six-month requirement. *Id.* at 9-10. Because the medical records showed that A.F.'s symptoms were resolved within five months of onset, Respondent argued, there existed no "genuine issue of material fact," and he should therefore prevail on his Motion for Summary Judgment. *Id.* at 8-9.

On September 10, 2012, Chief Special Master Patricia E. Campbell-Smith was assigned to the case. Order Reassigning Case, ECF No. 16. Almost a month later, on October 5, 2012, Petitioner filed an amended petition. Am. Pet., ECF No. 19. Petitioner alleged that A.F. suffered from "systemic juvenile arthritis"[3] and included an allegation that A.F. suffered "the residual effects of her injury for more than six months after the administration of the vaccine." *Id.* at 1, 15.

On the same day, October 5, 2012, Petitioner submitted her response to Respondent's Motion for Summary Judgment. Pet'r's Opp'n, ECF No. 20. Petitioner argued that A.F.'s "symptoms persisted and her laboratory values were abnormal for more than six months

---

[3] A.F.'s diagnosis in her medical records is referred to as "systemic juvenile idiopathic arthritis" [hereinafter "JIA"]. *See* Second Mot. Summ. J. 1 n.1 (noting that the amended petition may contain a typographical error).

following her vaccines." *Id.* at 16. Furthermore, Petitioner claimed that A.F. suffered from the effects of her Methotrexate treatment until May 2010 and experienced "vaccine-induced emotional distress and pain and suffering for approximately one year after receiving her vaccines." *Id.* Petitioner additionally argued that she alternatively fulfilled the severity requirement of the Vaccine Act. *Id.* at 21. Petitioner claimed that A.F. underwent "general anesthesia and a bone marrow biopsy," which satisfies the Vaccine Act's requirements that a claim may proceed if an injury results in inpatient hospitalization and surgical intervention. *Id.* (citing § 11(c)(1)(D)(iii)).

Respondent replied to Petitioner's Response on October 22, 2012. Resp't Resply, ECF No. 22. Respondent argued that A.F.'s laboratory tests, the side effects of her medication, and "aversion to needles" fail to meet the six-month requirement of the Vaccine Act. *Id.* at 2-5. Furthermore, Respondent argued, Petitioner's bone marrow biopsy does not qualify as an "inpatient hospitalization and surgical intervention" under § 11(c)(1). *Id.* at 5.

Chief Special Master Campbell-Smith issued her Ruling on Respondent's Motion for Summary Judgment on February 26, 2013. Ruling Mot. Summ. J., ECF No. 23. Chief Special Master Campbell-Smith agreed with Respondent that Petitioner could not show that A.F. suffered the residual effects of her injury "by pointing to either the health impact of A.F.'s prescribed medication or her attendant emotional response that manifested as a fear of receiving further shots." *Id.* at 6. Chief Special Master Campbell-Smith however disagreed with Respondent as to whether A.F.'s bone marrow biopsy fulfills the criterion of § 11(c)(1). *Id.* at 7-8. Petitioner's procedure was performed on an outpatient basis, Chief Special Master Campbell-Smith found, and a bone marrow biopsy does not qualify as a "surgical procedure." *Id.* "Nonetheless," Chief Special Master Campbell-Smith ordered Petitioner "to offer a medical opinion on this matter." *Id.* at 8. Chief Special Master Campbell-Smith also found that A.F.'s abnormal laboratory tests "might satisfy the statutory requirement that A.F.'s alleged vaccine-induced injury lasted for a period longer than six months." *Id.* at 7. Chief Special Master Campbell-Smith held that whether A.F.'s abnormal test results were related to her rheumatologic injury is unknown; therefore, "testimony from either a treating physician or an expert addressing the medical significance of these findings could be instructive." *Id.* Chief Special Master Campbell-Smith then ordered Petitioner to file an expert opinion addressing whether A.F.'s abnormal test results were "indicative with ongoing problems with JIA" and "whether A.F.'s normal bone marrow biopsy constituted a surgical intervention under the Vaccine Act." *Id.* at 8.

On May 29, 2013, Special Master Hamilton-Fieldman was assigned to this case. Order Reassigning Case, ECF No. 26. Petitioner filed her expert report on September 12, 2013. Pet'r's Expert Rep., ECF No. 30. Respondent then submitted a responsive expert report on January 13, 2014. Resp't's Expert Rep., ECF No. 32. Special Master Hamilton-Fieldman held a status conference on April 22, 2014. Min. Entry, dated April 22, 2014. During the status conference, Petitioner conceded that A.F.'s bone marrow biopsy did not constitute a surgical intervention. Errata, dated May 8, 2014. Special Master Hamilton-Fieldman then ordered Respondent to submit a renewed motion for summary judgment. *Id.*

Respondent filed his second Motion for Summary Judgment on May 20, 2014. Sec. Mot. Summ. J., ECF No. 34. Respondent reiterated his argument that Petitioner could not show that

3

A.F. suffered the residual effects of her alleged vaccine-caused injury for more than six months. *Id.* at 6-10.  Respondent noted that Petitioner conceded that A.F.'s bone marrow biopsy does not qualify as an inpatient surgical intervention, and therefore, "the sole remaining material fact at issue concerns the potential significant of the results of lab testing performed more than six months after the alleged onset of A.F.'s JIA, when she no longer exhibited any clinical symptoms of JIA." *Id.* at 4.  Respondent argued that both of the expert reports submitted after Chief Special Master Campbell-Smith's ruling found that A.F. was asymptomatic less than six months after the onset of her JIA "and remained so thereafter." *Id.* at 9.

Petitioner submitted her response on June 17, 2014.  Pet'r's Resp., ECF No. 35.  Petitioner argued that A.F.'s aggressive treatment constituted the "'residual effects' contemplated by the Vaccine Act." *Id.* at 21 (citing § 11 (c)(1)(D)(i)).  A.F.'s abnormal blood tests and the negative side effects of her treatment, Petitioner claimed, in addition to the "emotional distress" the alleged vaccine injury caused, fulfills the severity requirement of the Vaccine Act.  *Id.* at 20-23.  Therefore, Petitioner concluded, summary judgment was not appropriate.  *Id.* at 23.

Special Master Hamilton-Fieldman issued a ruling denying Respondent's motion for summary judgment on January 15, 2015.  Ruling Den. Resp't's Mot. Summ. J., ECF No. 37.  Special Master Hamilton-Fieldman found that "'residual effects or complications' and 'symptomatic' are not synonymous; one can suffer from a disease without exhibiting any clinical signs thereof." *Id.* at 6.  She held "that the ongoing need for medication to prevent symptoms and/or relapse of the alleged vaccine-caused illness constitutes a residual effect or complication of that illness." *Id.*

On February 11, 2015, Special Master Hamilton-Fieldman ordered the parties to prepare expert reports to address Petitioner's causation theory under *Althen v. Secretary of Health and Human Services*, 418 F.3d 1274 (Fed. Cir. 2005).  Order, ECF No. 39.  Petitioner submitted her expert report on June 15, 2015.  Expert Rep., ECF No. 44.  Respondent submitted three responsive expert reports on August 14, 2015.  Resp't's Expert Rep., ECF No 45.

On September 2, 2015, Special Master Hamilton-Fieldman held a status conference where she encouraged Petitioner to explore "alternative theories of adjuvant-induced inflammation."  Order, ECF No. 46.  She then ordered Petitioner to file another expert report.  *Id.*  Petitioner submitted this expert report on February 5, 2016.  Expert Rep., ECF No. 51.  Special Master Hamilton-Fieldman held another status conference on March 23, 2016.  Order, ECF No. 54.  During the status conference, Special Master Hamilton-Fieldman noted how helpful Petitioner's expert report was in explaining Petitioner's theory of causation and encouraged Respondent to consider settlement in the case.  *Id.*  Special Master Hamilton-Fieldman ordered Petitioner to forward a demand to Respondent and ordered Respondent to file a status report on how he wished to proceed.  *Id.*

On May 20, 2016, Respondent submitted a status report stating that he did not believe informal resolution was possible at that time and informed the Court that he intended to submit an expert report responding to Petitioner's theory of causation.  Status Rep., ECF No. 58.  Respondent filed this expert report on August 4, 2016.  Resp't's Expert Rep., ECF No. 60.  On

August 18, 2016, Special Master Hamilton-Fieldman held another status conference. Order, ECF No. 61. In the status conference, Special Master Hamilton-Fieldman noted that Respondent's recently-filed expert report highlighted several weaknesses in Petitioner's theory of causation. *Id.* Special Master Hamilton-Fieldman ordered Respondent to file the medical literature used to create his expert report and gave Petitioner time to determine whether she wanted to file a responsive report. *Id.*

On January 10, 2017, the undersigned was assigned to the case. Not. Reassignment, ECF No. 71. On January 13, 2017, Petitioner submitted a motion for an extension of time. Pet'r's Mot. Ext. Time, ECF No. 72. This motion stated that Petitioner "requested that her case be transferred to alternative counsel" and requested thirty days "to complete the transfer of her case, file a motion to substitute counsel[,] and file her medical expert report." *Id.*

On February 8, 2017, Petitioner submitted a Consented Motion to Substitute Attorney Sylvia Chin-Caplan in place of Ronald C. Homer. Mot. Sub. Att'y, ECF No. 75. Petitioner also submitted a Motion for Interim Attorneys' Fees and Costs for compensation for her former counsel, Mr. Homer. Mot. Int. Att'ys' Fees, ECF No. 74. Petitioner requested $58,559.10 in fees and $22,494.49 in costs, totaling $81,053.50. Mot. Int. Att'ys' Fees 1. A total of eight attorneys[4] in Mr. Homer's firm contributed to this case, and Petitioner requested varying amounts for their work. *Id.* at 34. Petitioner's requested hourly rates are as follows:

Ronald Homer
- $305 for part of 2012
- $315 for part of 2012 and part of 2013
- $322 for part of 2013 and part of 2014
- $400 for part of 2014 through 2017

Amy Fashano
- $208 for 2010
- $211 for 2011
- $218 for 2012
- $223 for 2013
- $285 for 2014

Sylvia Chin-Caplan[5]
- $315 for 2012
- $322 for 2013

---

[4] Petitioner's Motion for Interim Fees only refers to these attorneys by their surname. The undersigned cross-referenced Petitioner's motion with the interim fees decision in *McCulloch* in order to identify Petitioner's attorneys. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[5] Sylvia Chin-Caplan left Mr. Homer's firm at an undisclosed date. Ms. Chin-Caplan is therefore included in Mr. Homer's motion for interim fees even though she replaced Mr. Homer as Petitioner's counsel.

Christine Ciampolillo
- $203 for part of 2012
- $209 for part of 2012
- $213 for 2013
- $300 for 2014 through 2017

Joseph Pepper
- $213 for 2013
- $290 for 2014 through 2017

Kevin Conway
- $335 for part of 2012
- $346 for part of 2012 and part of 2013
- $415 for 2014, 2016 through 2017

Lauren Faga
- $265 for 2015-2016

Meredith Daniels
- $280 for 2015 through 2017

Paralegals[6]
- $105 for 2010
- $107 for 2011
- $110 for 2012
- $112 for 2013
- $135 for 2014 through 2017

Law Clerk[7]
- $140 for 2012

*See generally id.* Petitioner's motion also included two invoices for her experts. *Id.* at 54, 56. Dr. Michael Gurish requested a total of $8,800, for 22 hours at an hourly rate of $400. *Id.* at 54. Dr. Robert Sundel requested a total of $11,500, for 31.25 hours at an hourly rate of $400, minus Mr. Homer's firm's $1,000 retainer. *Id.* at 56.

Respondent submitted his Response on February 27, 2017. Resp't Resp., ECF No. 77. Respondent argued that interim attorneys' fees are only appropriate where "(1) the proceedings are protracted, (2) petitioner will retain or has retained expensive experts, or (3) petitioner would

---

[6] Mr. Homer provides no information related to his firm's paralegals, listing their billing requests as simply "PARALEGAL." *See generally* Mot. Int. Att'ys' Fees.

[7] Similar to Mr. Homer's paralegal requests, he provides no information related to his firm's law clerk. *See generally* Mot. Int. Att'ys' Fees.

otherwise suffer undue hardship." *Id.* at 1 (citing *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008)). Respondent wrote that he "defers to the Special Master as to whether petitioner is eligible for an award of interim attorneys' fees and costs" and "respectfully recommend[ed] that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 3. Petitioner did not submit a reply to Respondent's filing. *See* Docket Rep.

This matter is now ripe for a decision. For the reasons articulated below, the undersigned awards Mr. Homer the total of his request for interim fees.

## II.      STANDARDS FOR ADJUDICATION

In *Avera*, the Federal Circuit stated that a special master may award fees on an interim basis, and that such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). In *Shaw*, the Federal Circuit held that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010). Special masters have found it appropriate to award interim fees when petitioner's counsel withdraws from a case. *Davis v. Sec'y of Health & Human Servs.*, No. 15-277V, 2016 WL 3999784, at *3 (Fed. Cl. Spec. Mstr. July 5, 2016). Applying these standards, an award of interim attorneys' fees and costs is reasonable and appropriate in this case. This case was pending for five years before Mr. Homer moved for interim fees. Mr. Homer submitted three expert reports in this case, incurring over $20,000 in costs for these reports alone. *See* Mot. Int. Att'ys' Fees 54, 56. In addition, Mr. Homer filed his motion for fees on the same day he was substituted as Petitioner's attorney of record. Altogether, these reasons establish a basis for an award of reasonable interim attorneys' fees and costs.

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1348. This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the numbers of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Attorneys may be awarded fees for travel if they provide adequate documentation that they performed legal work during that travel. *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 791 (2010).

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). For example, an attorney that has been practicing for twenty or more years has an appropriate hourly rate between $350 and $425. *Id.* An attorney with eight to ten years of experience, on the other hand, has a reasonable hourly rate between $275 and $350. *Id.*

### III. DISCUSSION

#### A. Reasonable Hourly Rate

The first step of the lodestar approach involves determining an estimate by calculating "the numbers of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quotation omitted). An appropriate hourly rate for the attorneys, paralegals, and law clerks of Mr. Homer's firm was found in *McCulloch*. 2015 WL 5634323 at *21. The rates requested in this case are all consistent with those found in *McCulloch*. Ms. Lauren Faga was not included within the *McCulloch* decision, but her requested rate of $265 per hour has recently been found reasonable. *See Thomure v. Sec'y of Health & Human Servs.*, No. 15-322V, 2016 WL 3086389 (Fed. Cl. Spec. Mstr. Apr. 12, 2016). Therefore, the undersigned finds that the requested rates in this case are reasonable.[8]

#### B. Hours Expended

The second step in *Avera* is for the Court to make an upward or downward modification based upon specific findings. 515 F.3d at 1348. In a review of Mr. Homer's billing records, the undersigned did not find any duplicative, unnecessary, or travel-related requests. Therefore, the undersigned finds that a modification of an award of Mr. Homer's interim attorneys' fees is unwarranted.

#### C. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). Mr. Homer requests $22,494.40

---

[8] The undersigned wants to remind Mr. Homer and his firm of Special Master Moran's finding in *Floyd v. Secretary of Health and Human Services.*, No. 13-556V, 2017 WL 1344623 (Fed. Cl. Spec. Mstr. Mar. 2, 2017). In *Floyd*, Special Master Moran warned Mr. Homer's firm of its practice of not providing any justification for their paralegals' requested rates. *Id.* at *4. Special Master Moran expected that, "on a going forward basis, [Mr. Homer's firm] will identify paralegals by name and provide some information about the qualifications and experience of the paralegal" in order for special masters accurately to award reasonable paralegal hourly rates. *Id.* As this motion for attorneys' fees was filed a month before *Floyd* was issued, the undersigned will not reduce Mr. Homer's request for his paralegals' rates; however, the undersigned will expect further documentation in the future.

in attorneys' costs.  Mot. Int. Att'ys' Fees 1.  These costs are primarily associated with acquiring medical records and the corresponding postage for those records.  *Id.* at 35-56.  Mr. Homer's expert costs total $20,300, or approximately 90% of Mr. Homer's cost request.  *Id.* at 54, 56.  The undersigned finds Dr. Gurish's request of $400 per hourly as reasonable.  In *Sexton v. Secretary of Health and Human Services*, No. 99-453V, 2015 WL 7717209, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2015), Chief Special Master Dorsey found Dr. Gurish's request for $500 per hour reasonable, and the undersigned finds that a lower hourly request for the same expert is reasonable.   Dr. Sundel's request for an hourly rate of $400 is likewise found to be reasonable.  The undersigned therefore awards Mr. Homer's costs in full.

## IV.    CONCLUSION

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), the undersigned awards Mr. Homer's fees and costs request in full.  Accordingly, the undersigned awards **the total of $81,053.50 to be issued in the form of a check payable jointly to Petitioner and Petitioner's former counsel, Ronald Craig Homer, of Conway, Homer, P.C., for attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[9]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.